UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN BUS ASSOCIATION; DATTCO, INC.; STARR TRANSIT CO., INC., on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>NEW YORK STATE THRUWAY AUTHORITY; NEW YORK STATE CANAL CORPORATION; BILL FINCH in his official capacity as Acting Executive Director of the New York State Thruway Authority; JOANNE M. MAHONEY in her official capacity as Chair of the New York State Thruway Authority/Canal Corporation Boards of Directors; DONNA J. LUH in her official capacity as Vice-Chair of the New York State Thruway Authority/Canal Corporation Boards of Directors; and RICHARD N. SIMBERG, J. DONALD RICE JR., JOSÉ HOLGUÍN-VERAS, ROBERT L. MEGNA, STEPHEN M. SALAND, in their official capacities as members of the New York State Thruway Authority/Canal Corporation Boards of Directors,<br><br>*Defendants*. | Civil Action No. 1:17-cv-782<br><br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION

1. This is a class-action complaint on behalf of all bus companies engaged in interstate commerce that, since February 1, 2014, have paid tolls to the New York State Thruway Authority.

2. This Court already has held that the toll system employed by the Thruway Authority violates the Commerce Clause of the U.S. Constitution. *See Am. Trucking Ass'ns, Inc. v. New York State Thruway Auth.*, 2016 WL 4275435 (S.D.N.Y. Aug. 10, 2016) ("*ATA*").

3. The constitutional violation found in *ATA* affects interstate bus companies in precisely the same way as it affects interstate trucking companies.

4. The class accordingly seeks refunds of the illegal portion of the tolls exacted from the class members and an injunction against further constitutional violations.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs are seeking redress under 42 U.S.C. § 1983 for the deprivation, under color of state law, of the rights of citizens of the United States secured by the Constitution and federal law.

6. Venue is proper under 28 U.S.C. § 1391(b).

## FACTS

### A. The Parties To This Action.

7. This action is brought by several bus companies that have been negatively and directly affected by the Thruway Authority's unconstitutional toll regime, and by the trade association that exists to protect the interests of the buses that ply New York's and the nation's roads, including the Thruway.

8. Plaintiff American Bus Association ("ABA") is the largest national trade association for the bus and motorcoach industry. ABA represents approximately 800 bus companies operating in interstate commerce in the United States, including many that regularly

carry passengers to, from, and through the State of New York using the Thruway and pay tolls to the Thruway Authority. ABA's principal place of business is in Washington, DC.

9. The interests that ABA seeks to protect in this action are germane to the purposes of the association. Neither the claims nor the forms of relief sought in this action require participation by the association's individual members. One or more members of the association have standing to bring this action in their own right.

10. Plaintiff DATTCO, Inc. ("DATTCO") is a motor carrier of passengers operating in interstate commerce under authority issued by the Federal Motor Carrier Safety Administration. DATTCO is based in New Britain, Connecticut, and provides charter, scheduled, tour, and special operations bus service. DATTCO vehicles regularly operate on the New York State Thruway, and the company pays tolls to the New York State Thruway Authority.

11. Plaintiff Starr Transit Co., Inc. ("Starr") is a motor carrier of passengers operating in interstate commerce under authority issued by the Federal Motor Carrier Safety Administration. Starr is based in Trenton, New Jersey, and provides charter, tour, and special operations bus service in 48 motorcoaches. Starr vehicles regularly operate on the New York State Thruway, and the company pays tolls to the New York State Thruway Authority.

12. Defendant New York State Thruway Authority was and is a public-benefit corporation organized and existing under, and by virtue of, a charter from the State of New York.

13. The Thruway Authority is an autonomous public-benefit corporation, not the "alter ego" or an "arm" of the State of New York. *See Mancuso v. New York State Thruway Auth.*, 86 F.3d 289, 297 (2d Cir. 1996); *see also Am. Trucking Ass'n, Inc. v. New York State*

*Thruway Auth.*, 795 F.3d 351, 354 (2d Cir. 2015) (holding that New York State was not an indispensable party in a lawsuit against the Thruway).

14. Defendant Bill Finch is the Acting Executive Director of the Thruway Authority.

15. Defendant Joanne M. Mahoney is the Chair of the New York State Thruway Authority/Canal Corporation Boards of Directors.

16. Defendant Donna J. Luh is the Vice-Chair of the New York State Thruway Authority/Canal Corporation Boards of Directors.

17. Defendants Richard N. Simberg, Donald Rice Jr., José Holguín-Veras, Robert L. Megna, and Stephen M. Saland are members of the New York State Thruway Authority/Canal Corporation Boards of Directors.

18. The Thruway Authority's principal place of business is in Albany, New York.

19. The Thruway Authority has a broad array of statutory responsibilities.

20. At all relevant times, the Thruway Authority has been charged with managing transportation facilities in the State of New York.

21. Among other facilities, the Thruway Authority operates the New York State Thruway.

22. Under former Section 5 of New York's Canal Law, the "powers and duties of the commissioner of transportation relating to the New York state canal system" were "transferred to and merged with the [Thruway Authority], to be exercised by the [Thruway Authority] on behalf of the people of the state of New York." N.Y. Canal Law § 5 (2016).

23. In 1992, therefore, the New York State Canal Corporation (also a public-benefit corporation) was formed as a subsidiary of the Thruway Authority.

24. The Canal Corporation was formed to operate, maintain, and promote the Canal System.

25. Effective January 1, 2017, the Canal System was transferred to the New York Power Authority. N.Y. Canal Law § 5.

26. The legislation transferring the Canal System to the Power Authority permitted the Power Authority to reimburse the Thruway Authority "for any and all operating and capital costs, expended by the [T]hruway [A]uthority for the operation and maintenance [of the Canal System] . . . for the period of April 1, 2016 through January 1, 2017." 2016 N.Y. Laws 54, p. 120, § 28 (McKinney). The Power Authority subsequently entered into an agreement to reimburse the Thruway Authority for its canal-related costs during that period. *See* Letter, *Am. Trucking Ass'ns, Inc. v. New York State Thruway Auth.*, No. 13-cv-8123 (S.D.N.Y. Aug. 15, 2016), ECF No. 71; *Canal Transfer Effort* at 2, 4, N.Y. POWER AUTH. (Jul. 26, 2016), perma.cc/RZ6C-NSCM.

27. Prior to the transfer to the Power Authority, the Thruway Authority controlled the maintenance and operation of the New York State Canal System through the Canal Corporation. *See* JACOBS CIVIL CONSULTANTS, INC., N.Y. STATE THRUWAY FINANCIAL REQUIREMENTS & PROPOSED TOLL ADJUSTMENTS 2012-2016 ("JACOBS REPORT") II-6 (2012), *available at* http://www.thruway.ny.gov/news/pressrel/2804.pdf.

28. Because the Canal Corporation was, until recently, a subsidiary of the Thruway Authority and was controlled by it, and because the individually named Defendants are officers and directors of the Thruway Authority or the Canal Corporation in their official capacities, this Complaint uses the term "Thruway Authority" to refer to all Defendants collectively.

### B. The Thruway Is A Significant Instrumentality Or Channel Of Interstate Commerce.

29. The Thruway is a significant instrumentality or channel of interstate commerce.

30. Encompassing approximately 570 miles of roadway, the Thruway is one of the longest tolled highway systems in the United States. *See Frequently Asked Questions (FAQs)*, N.Y. STATE THRUWAY, perma.cc/SJ43-PS8F; JACOBS REPORT II-1.

31. The Thruway is a vital commercial link to and from New York's largest cities, and to the entire Northeast region of the United States. *See Frequently Asked Questions.*

32. The mainline of the Thruway extends 426 miles, from New York City to Pennsylvania. *See Frequently Asked Questions.*

33. Other elements of the Thruway system include:

- the New England Thruway (I-95), which links New York to Connecticut;
- the Cross Westchester Expressway (I-287), which links New York to New Jersey;
- the Garden State Parkway Connector, which similarly links New York to New Jersey; and
- the Berkshire Connector (I-90), which links New York to Massachusetts.

See Frequently Asked Questions.

34. Approximately 250 million vehicles travel more than eight billion miles on the Thruway each year. *See Frequently Asked Questions.*

35. Among these vehicles are buses and motor coaches carrying passengers within New York, between New York and other states, and from one state outside New York to another by way of New York.

36. Interstate bus companies using the Thruway include firms based within the State of New York and firms based outside New York.

37. Approximately one-third of all vehicles using the Thruway are from out of state. *See Overview of the Thruway System*, N.Y. STATE THRUWAY, perma.cc/C9MM-VCZ9.

38. For buses, the percentage from out of state, or else traveling to or from another state, is much higher yet.

39. Commercial vehicles—predominantly trucks and buses—make up 10% of annual traffic on the Thruway. *See* JACOBS REPORT IV-3.

40. This commercial traffic accounts for approximately 37% of Thruway revenues. *See* JACOBS REPORT IV-3.

41. Commercial users of the Thruway thus bear a significant portion of the costs associated with operating and maintaining the Thruway.

### C. The Thruway Is A User-Supported System.

42. The Thruway Authority receives no tax dollars from the State of New York.

43. The Thruway Authority receives only small amounts of federal aid. The Thruway received just $10.7 million in federal funding in 2016 (a small fraction of the Thruway's $2 billion budget that year), and the Thruway's 2017 budget anticipates *no* federal funding. *See* N.Y. STATE THRUWAY AUTH., 2017 BUDGET at 21, 31 (2016), http://www.thruway.ny.gov/about/financial/budgetbooks/books/2017-budget.pdf.

44. The Thruway Authority depends almost entirely on toll revenues to operate, maintain, and police the roads and bridges that it administers.

45. Because it relies on toll revenues, the Thruway is, in the Thruway Authority's own words, "a user-fee supported [h]ighway [s]ystem." *See* 2017 BUDGET at 5.

46. Only motorists who use the Thruway pay for it.

47. As a consequence, the burdens of operating and maintaining the Thruway are borne almost entirely by those individuals and businesses, both within and outside New York, who actually travel on the Thruway.

48. The Thruway collects tolls through two primary systems: a controlled (ticket) system and a barrier system. *See* JACOBS REPORT II-1.

49. The controlled system covers the largest portion of the Thruway. *See* JACOBS REPORT II-1.

50. Within the controlled-system portion, the tolls charged are based on the actual distance that the vehicle travels on the system, as well as the vehicle's class and the method of payment that the driver uses. *See* JACOBS REPORT II-1.

51. Vehicle class (which determines the toll scale) is tied to the vehicle's height and number of axles. *See* JACOBS REPORT II-1.

52. Taller vehicles and vehicles with more axles pay more per mile for use of the Thruway. *See* JACOBS REPORT VII-1.

53. For example, a two-axle "low" vehicle (such as an ordinary passenger automobile) paying with cash is charged 0.047 cents per mile; a three-axle low vehicle is charged 0.0728 cents per mile; and a four-axle low vehicle is charged 0.0864 cents per mile. For "high" vehicles (i.e., those that are seven-feet six-inches tall or greater), the tolls range from 0.0933 cents per mile for a two-axle vehicle to 0.3536 cents per mile for a seven-axle vehicle. *See* JACOBS REPORT VII-1; *Vehicle Classification Information*, N.Y. STATE THRUWAY, perma.cc/ZB5A-QKPF.

54. The barrier system features fixed toll rates, based on the class of vehicle traveling on the Thruway and the type of payment used. *See* JACOBS REPORT II-1.

55. For example, at the Tappan Zee Bridge tolls for vehicles paying with cash ranges from $5.00 for two-axle low vehicles to $49.25 for seven-axle high vehicles. *See* JACOBS REPORT VII-1.

56. The Thruway Authority also collects certain non-toll revenues, including payments from concessionaires at the Thruway service areas, sales of surplus property, issuance of special hauling permits, administrative fees from E-ZPass toll violators, contracts for fiber-optic lines along the Authority's rights of way, interest on invested funds, and other miscellaneous sources. *See* JACOBS REPORT III-7.

57. These non-toll sources of revenue represent only a small percentage of the Thruway Authority's total revenue.

58. For example, non-toll sources of revenue totaled $34.6 million in 2015 and are projected to total $36.3 million in 2016—less than 5% of the Thruway Authority's total revenue those years. *See* 2017 BUDGET at 23.

### D. The Thruway Authority Made Substantial Expenditures Every Year To Maintain The Canal System.

59. From 1992 until January 1, 2017, the Thruway Authority also administered the Canal System.

60. In its current form, the Canal System comprises approximately 524 miles of canals, including the Erie Canal, the Oswego Canal, the Cayuga-Seneca Canal, the Champlain Canal, and canalized natural waterways, as well as five lakes (Lakes Oneida, Onondaga, Cross, Cayuga, and Seneca). *See About the Canal Corporation*, N.Y. STATE CANALS, perma.cc/ZV8S-X6Z2; JACOBS REPORT IV-2.

61. In 1992, the New York State legislature enacted legislation that transferred the Canal System from the New York State Department of Transportation (which had previously administered the canals) to the Thruway Authority.

62. As a result of this transfer, New York no longer had to support the Canal System from the State's general fund.

63. The Canal System is neither self-sustaining nor self-funded.

64. Instead, the Thruway Authority has diverted large sums from Thruway toll revenues to support the canals and trails.

65. A 2012 investigation by the Office of the New York State Comptroller revealed that the Canal System had consumed more than $1.1 billion of Thruway resources since 1992. *See* OFFICE OF THE STATE COMPTROLLER, ASSESSMENT OF THE THRUWAY AUTHORITY'S FINANCES & PROPOSED TOLL INCREASE ("Comptroller's Assessment") at 7 (2012), http://www.osc.state.ny.us/reports/thruway_policy_08142012.pdf.

66. The Thruway Authority reports its canal-related expenditures in its annual financial statements.

67. In 2013, total operating expenses (excluding depreciation and amortization) for the Thruway, the Canal Corporation, and other Thruway Authority projects were $419.2 million. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2013 & 2012, at 4 (2014).

68. The Thruway Authority generated $682.8 million in total operating revenue. *See id.* at 8.

69. Of that $682.8 million, $648.9 million was derived from tolls. *See id.*

70. All told, the Thruway Authority's non-toll sources of revenue—including all revenue from canal fees as well as from all other sources—accounted for only $33.9 million in operating revenue. *See id.*

71. In 2013, operating expenditures on the canals totaled at least $68.1 million. *See id.* Any capital expenditures on the canals were in addition to that amount.

72. A large percentage of the expenditures on the canals came from toll revenues, not from canal revenues or other non-toll sources.

73. The canals generate only an average of about $2 million dollars in user fees annually. *See ATA*, 2016 WL 4275435, at *4.

74. In 2014, total operating expenses (excluding depreciation and amortization) for the Thruway, the Canal Corporation, and other Thruway Authority projects were $424.6 million. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2014 & 2013, at 3 (2015).

75. The Thruway Authority generated $698.8 million in total operating revenue. *See id.* at 7.

76. Of that $698.8 million, $664.1 million was derived from tolls. *See id.*

77. All told, the Thruway Authority's non-toll sources of revenue—including all revenue from canal fees as well as from all other sources—accounted for only $34.7 million in operating revenue. *See id.*

78. In 2014, operating expenditures on the canals totaled at least $65.9 million. *See id.*, at 7. Any capital expenditures on the canals were in addition to that amount.

79. A large percentage of the expenditures on the canals came from toll revenues, not from canal revenues or other non-toll sources.

80. In 2015, total operating expenses (excluding depreciation and amortization) for the Thruway, the Canal Corporation, and other Thruway Authority projects were $407.9 million. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2015 & 2014, at 3 (2016).

81. The Thruway Authority generated $728.6 million in total operating revenue. *See id.* at 7.

82. Of that $728.6 million, $691.7 million derived from tolls. *See id.*

83. All told, the Thruway Authority's non-toll sources of revenue—including all revenue from canal fees as well as from all other sources—accounted for only $36.9 million in operating revenue. *See id.*

84. In 2015, operating expenditures on the canals totaled at least $62.1 million. *See id.* Any capital expenditures on the canals were in addition to that amount.

85. A large percentage of the expenditures on the canals came from toll revenues, not from canal revenues or other non-toll sources.

86. From January through March 2016, total operating expenses (excluding depreciation and amortization) for the Thruway, the Canal Corporation, and other Thruway Authority projects were $88.9 million. *See* N.Y. STATE THRUWAY AUTH., MONTHLY FINANCIAL REPORT: MARCH 2016, at 4 (2016).

87. From January through March 2016, the Thruway Authority generated $160.5 million in total operating revenue. *See id.* at 2.

88. Of that $160.5 million, $153.1 million derived from tolls. *See id.*

89.     All told, the Thruway Authority's non-toll sources of revenue—including all revenue from canal fees as well as from all other sources—accounted for only $7.4 million in operating revenue. *See id.*

90.     From January through March 2016, operating expenditures on the canals totaled at least $12.25 million. *See id.* at 4. Any capital expenditures on the canals were in addition to that amount.

91.     A large percentage of the expenditures on the canals came from toll revenues, not from canal revenues or other non-toll sources.

### E. The Thruway Is Still Using Toll Revenue To Pay Interest On Bonds Issued As A Result Of Its Support For The Canal System.

92.     As a result of its diversion of toll revenue to pay for the costs of the Canal System, the Thruway Authority was forced to pay part of its own operating costs by issuing bonds that it otherwise would not have issued (or by issuing larger bonds than it otherwise would have).

93.     The Thruway continues to divert toll revenue to pay interest on this additional indebtedness, which is not attributable to any cost or expense of operating the Thruway.

94.     The Thruway is continuing to pay interest on this additional indebtedness despite the transfer of the Canal System to the Power Authority.

95.     In addition, in 2011 the Thruway Authority took out a loan to cover the cost of repairing the Canal System following Hurricane Irene and Tropical Storm Lee. The Thruway Authority continues to make payments on that loan using toll revenue.

### F. The Thruway Authority's Artificially Inflated Bus Tolls Inflict Significant And Unconstitutional Costs On Commercial Bus Operators Engaged In Interstate Commerce.

96. There is no functional relationship between the Thruway and the Canal System.

97. Both the funding scheme for the Canal System in place until January 1, 2017—which diverted toll revenue to fund the Canal System directly—and the Thruway's ongoing practice of paying interest on Canal-related indebtedness with toll revenue cause bus companies engaged in interstate commerce to bear costs unrelated to their use of the Thruway.

98. The tolls charged by the Thruway to interstate bus companies are not a fair approximation of their use of the Thruway.

99. The Thruway's tolls are excessive in relation to the benefits received by interstate bus companies.

## CLASS-ACTION ALLEGATIONS

100. In accordance with Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the class of:

> All bus companies engaged in interstate commerce that, since February 1, 2014, have paid tolls to the Thruway Authority.

101. The members of the class are so numerous as to render joinder impracticable. On information and belief, several hundred interstate bus companies pay tolls for buses traveling on Thruway Authority roads.

102. This action presents questions of law and fact that are common to the entire class and that affect the rights of all class members. All class members possess constitutional rights that the Thruway Authority has infringed during the class period.

103. The Thruway Authority has acted in a common manner toward all members of the class by, among other things, promulgating and enforcing a generally applicable toll regime. The common questions of law and fact that unite all members of the class relate to the Thruway Authority's promulgation and enforcement of its system of tolls and the legal question whether the Thruway Authority's toll policies and practices were constitutionally permissible.

104. Plaintiffs' claims are typical of all class members' claims in that the named Plaintiffs have paid the unconstitutional tolls just as all the class members have; and by virtue of their continued use of the Thruway Authority's toll roads, Plaintiffs will continue to pay the unconstitutional tolls unless this Court enjoins the Thruway Authority from maintaining its unconstitutional toll regime.

105. Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class. Plaintiffs have no interests that are adverse to the interests of the class members.

106. Counsel for the named Plaintiffs are qualified, experienced, and able to conduct this litigation—indeed, Messrs. Tager, Goeke, and Waring and Ms. Portner are currently counsel of record in a similar class action against the Thruway on behalf of interstate truckers. *See Am. Trucking Ass'ns, Inc. et al. v. N.Y. State Thruway Auth. et al.*, No. 13-cv-8123 (CM) (DCF) (S.D.N.Y.). Counsel will fairly and adequately protect the interests of the class.

107. This action is properly maintained as a class action because the Thruway Authority has acted or refused to act on grounds generally applicable to the class, thereby making it appropriate to issue final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Plaintiffs and all the class members have suffered violations of

their constitutional rights and sustained monetary damages as a result of a generally applicable toll regime that the Thruway Authority has promulgated and has enforced against the class.

108. The questions that are common to the class—most pertinently whether the toll system violates the Commerce Clause—predominate over any questions that affect only individual class members.

109. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all individual members of the class would be impracticable given the large number of class members and the fact that the class members are dispersed over a large geographical area. Furthermore, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to obtain redress for the wrongs done to them. The judicial resources required to adjudicate hundreds of individual cases would be enormous. Individualized litigation would also magnify the delay and expense to all parties. By contrast, the conduct of this action as a class action in this District would present far fewer management difficulties, conserve judicial and party resources, protect the rights of each member of the class, and permit resolution of this controversy efficiently, in a single proceeding.

110. This action seeks declaratory and injunctive relief, among other remedies. Accordingly, Plaintiffs request class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure, because all class members were and are subject to the same unconstitutional toll policies, and the class members' individual monetary damages are incidental to the existence of the unconstitutional toll policies. In addition, Plaintiffs request certification under Rule 23(b)(3) because they seek monetary relief in the form of damages, disgorgement, recoupment, or

restitution. Insofar as this Court determines that class certification is proper for some but not all issues presented by this Complaint, Plaintiffs seek partial certification under Rule 23(c)(4).

## CLAIMS FOR RELIEF

## COUNT ONE

### THE THRUWAY AUTHORITY'S ARTIFICIALLY INFLATED BUS TOLLS VIOLATE THE COMMERCE CLAUSE AND 42 U.S.C. § 1983.

111.  Paragraphs 1-110 are incorporated as if set forth in full.

112.  The Thruway Authority's enactment, implementation, and enforcement of its artificially inflated toll rates have deprived, and will continue to deprive, Plaintiffs of rights secured by the Commerce Clause of the United States Constitution and 42 U.S.C. § 1983 because they are not based on a fair approximation of interstate bus companies' use of the Thruway and because they are excessive in relation to the benefits conferred on interstate bus companies for paying those tolls.

113.  Defendants Bill Finch, Joanne M. Mahoney, Donna J. Luh, Richard N. Simberg, Donald Rice Jr., and José Holguín-Veras, Robert L. Megna, and Stephen M. Saland, acting in their official capacities as supervisors or administrative officers of Defendant Thruway Authority, instituted, authorized, ratified, permitted, or acquiesced in the enactment, continuation, and enforcement of the unconstitutional toll rates.

114.  As a direct and proximate result of Defendants' violation of Plaintiffs' constitutional rights, Plaintiffs have sustained damages or are entitled to restitution, disgorgement, or recoupment in the amount of the excess tolls collected from Plaintiffs that have been used to support the Canal System.

115.  Unless the charging of tolls beyond the constitutionally permissible amount for a user fee is enjoined, Plaintiffs will suffer irreparable harm.

## PRAYER FOR RELIEF

For Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs respectfully request:

A. An order certifying this action as a class action under Rule 23(b)(2) and Rule 23(b)(3), appointing Plaintiffs' counsel as class counsel, and requiring notice to class members as required by Rule 23(c);

B. A permanent injunction enjoining Defendants from continuing to implement or enforce the Thruway Authority's discriminatory bus-toll rates and from continuing to subsidize the Canal System with bus-toll revenues;

C. An award of damages, disgorgement, recoupment, or restitution to the named Plaintiffs and the class members in an amount to be determined by the Court;

D. Prejudgment interest on that award at the New York statutory rate of 9% per annum;

E. A monetary award for attorneys' fees and the costs of this action, including, where applicable, expert-witness fees, in accordance with 42 U.S.C. § 1988 and Fed. Rule Civ. P. 23(h); and,

F. Any other relief for the named Plaintiffs and each member of the class that the Court deems proper.

Dated: February 1, 2017

By: _____
Reginald R. Goeke
Evan M. Tager (*pro hac vice* admission motion forthcoming)
Kristina M. Portner
Matthew A. Waring (*pro hac vice* admission motion forthcoming)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Richard P. Schweitzer
Richard P. Schweitzer, PLLC
1717 K Street, N.W.
Suite 900
Washington, DC 20006
Telephone: (202) 223-3040

Attorneys for Plaintiffs